UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARK SZUSZKIEWICZ,

                              Plaintiff,

        -against-

JPMORGAN CHASE BANK,

                             Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

12-cv-3793 (SLT) (VMS)

**TOWNES, United States District Judge,**

      Plaintiff Mark Szuszkiewicz brings this employment discrimination suit against his former employer J.P. Morgan Securities LLC (hereinafter "J.P. Morgan"), successor to Chase Investment Services Corp., incorrectly named in the complaint as JPMorgan Chase Bank. He claims that he was subjected to a hostile work environment and termination on account of his mental disability in violation of the Americans with Disabilities Act. J.P. Morgan now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted in part and denied in part.

## LEGAL STANDARD

      Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Igbal*, 556 U.S. at 678-79.

The Supreme Court has clarified that *Twombly* sets out a two-pronged approach for district courts considering motions to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678-79 (2009). District courts should first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

The Court is generally limited to the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). It may also consider "matters of which judicial notice may be taken, or ... documents either in plaintiff[']s[] possession or of which plaintiff[] had knowledge and relied on in bringing suit," *Brass v. Am. Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted), such as the EEOC charge of discrimination and subsequent decision. *See Morris v. David Lerner Associates*, 680 F. Supp. 2d 430, 435-36 (E.D.N.Y. 2010) (considering EEOC charge of discrimination and right to sue letter as public documents and documents relied on in drafting the complaint).[1]

---

[1] The Charge of Discrimination filed with the EEOC which is attached as Exhibit 9 to the March 18, 2013 Affidavit of Frederic Lieberman submitted in support of Defendant's Motion to Dismiss. It is incorporated in the complaint, which attaches the Dismissal and Notice of Right to Sue issued by the EEOC, bearing charge no. 520-2011-03387, and it is also a public record of which the Court takes judicial notice.

Plaintiff's complaint consists of the Eastern District of New York Pro Se Office's five page form complaint for employment discrimination appended to which is a right to sue letter from the EEOC and an eight page single-spaced narrative, most of which details events and recollections that are irrelevant to the claims before this Court. As plaintiff proceeds *pro se* this Court construes his complaint liberally.[2]

## BACKGROUND

For purposes of this motion, the Court accepts as true, the following facts alleged in Plaintiff's Complaint:

### *1. Employment as a Financial Advisor*

Plaintiff began working at J.P. Morgan on January 15, 2008. (Compl. at 5.) He received training in selling annuities on several occassions from J.P. Morgan and its affiliates, including in a Manhattan branch and at a training program in Columbus, Ohio. (Compl. at 5.) He then went to work at several branches in Brooklyn selling annuities. He was initially assigned to the Park Slope West and Carroll Gardens Branches and, in July 2008, he was assigned to a third branch in Dumbo. (Compl. at 5-6.)

Plaintiff believed he was very good at his job and that he was going to be one of the "top Bankers … [and] go to Vegas." (Compl. at 7.) For example, on one occasion, plaintiff was not aware that an appointment had been added to his calendar. When he arrived for work that

---

[2] It is well established that "submissions of a *pro se* litigant must be construed liberally" and "it [i]s the obligation of the district court … to interpret [a *pro se* plaintiff's] complaint to raise the strongest arguments that they suggest" because "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal citations and punctuation omitted). "At the same time, [the district court] cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations" nor does *pro se* status "exempt a party from compliance with relevant rules of procedural and substantive law." *Id*. at 477 (internal citations and punctuation omitted).

morning at the Carroll Gardens branch, the branch manager and a coworker threatened to cancel his appointment, but because plaintiff "can sell in [his] sleep," he went ahead with the meeting and successfully sold a $712,000 Genworth annuity to a difficult client. (Compl. at 6.)

2. *Relationship with "Nory"*

At some point, plaintiff received training at a Dumbo J.P. Morgan branch, where plaintiff "had the unfortunate pleasure of meeting ["Nory"] who [*sic*] [he] later thought of as love at first sight … [and who] taught him [a] technique at [C]hase for [selling] annuities." (Compl. at 6.) Nory was an employee of Genworth Annuities, one of J.P. Morgan's vendors.

Plaintiff's $712,000 sale of Genworth annuities "caught the attention of Nory," who gave plaintiff her phone number and scheduled an appointment to meet with him. (Compl. at 7.) They met on several occasions and Nory spoke with him in a "flirtatious[]" manner. (*Id*.) Plaintiff wrote "embarrassing poetry" about Nory. (*Id*.) He "liked Nory because she impressed [him] with her intelligence and beauty" but he "kept everything professional" with her "until [he] lost [his] mind." (Compl. at 8). In July 2008, when plaintiff's mental health problems started, he and Nory met for lunch. After lunch, Nory kissed plaintiff on the cheek in front of his coworkers. Plaintiff believed he had fallen in love with Nory. (Compl. at 11.) After this, his coworkers began accusing him of promoting Genworth annuities over other annuities because he had a crush on Nory. (*Id*.)

3. *Hostile Work Environment*

Plaintiff alleges that he was subject to a hostile work environment because his coworkers accused him of alcoholism and questioned his scruples. "For some reason during the entire timeframe I was there everyone … thought I was an alcoholic and a degenerate. … I had my manager Edmund sniff me constantly when I walked into the branch in the morning and if he

smelled alcohol he would say 'Why are you drinking so early'?[] I'm not drinking so early it was from last night and I would have to repeatedly explain this to him along with my other coworkers …." (Compl. at 8.) When he went to lunch, he "would come back at 2pm or whatever time and be sniffed." (*Id.*) His coworkers also accused him of visiting prostitutes in Atlantic City. (*Id.*) Plaintiff's coworkers persisted until plaintiff "broke down crying in July 2008 and was saying I don't [visit] prostitutes, I don't drink all the time…." (*Id.*) Around that time, his coworkers "question[ed his] morals" and accused him of selling certain annuities because of his crush on Nory. (*Id.*) It was this hostility at work which plaintiff alleges caused or contributed to his mental illness. (Opp'n at 2.)[3]

### 4. *Mental Illness*

Plaintiff developed a mental illness while working at J.P. Morgan. (Compl. at 8.) At some point in July 2008, he made a sale but when he went to his computer to input the sale, he could not focus, and "[i]t took over an hour [to do] what used to take 5 minutes…." (Compl. at 9.) The following day, he was unable to "focus or think straight." (*Id.*) He believed that "everyone was speaking in codewords … about [him]" and that his coworkers were telling Nory that he was a "degenerate gambling alcoholic who has sex with prostitutes." (*Id.*)

Over the next few days, he did not go to work. He repeatedly told his employer that he needed some time off. He could not "sleep for days and began writing poetry which started out as a love poem for Nory … and then evolved to [plaintiff] having a savior complex and [believing that he] needed to write an inspiring poem to save the world." (*Id.*) During this

---

[3] Where consistent with the complaint, facts are also drawn from plaintiff's opposition to defendant's motion to dismiss ("Opp'n"). *See Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint.").

leave, at some point during July or August 2008, Plaintiff scheduled an appointment with a client for Saturday, September 6, 2008, because he "hoped by then [he] could be ready to work again [in a month]" and also because he found the digits six and nine to have "degenerate significance" and to be "comical." (*Id*.)  Around that time, he also sent text messages to his colleagues. Plaintiff disconnected his phone because the ringing "drove [him] nuts" and spent several days locked in his home in a paranoid state.

At some point in July or August, 2008, plaintiff decided that he was healthy enough to return to work, but when he arrived, he could not remember how to log into his computer and "had so many different thoughts about what [he] was doing and none of them made any logical sense." (Compl. at 10.)  Plaintiff's boss followed plaintiff out and fired him.  Plaintiff "told him that [he] hit his head playing basketball and [he couldn't] think straight and if [plaintiff is] disabled then he can't fire [him]." (*Id*.)  Plaintiff filled out paperwork to take a leave of absence. Plaintiff was admitted to Coney Island Hospital overnight where he was prescribed medication, but he never took it and his mental health "progressively got worse." (*Id.*)

Plaintiff notified his supervisor when he was released from the hospital and informed him that he had a prescription for medication. (*Id*.)  Plaintiff remained in contact with three supervisors "informing them of [his] acts, rehabilitation, and recovery." (Opp'n at 2.)

5. *Arrest*

In early September 2008, plaintiff started to call Nory periodically. (Compl. at 10.)  She stopped picking up the phone, so he decided that she had been killed because plaintiff included her in his poetry. (*Id*).  He continued calling her.  The police arrested him and an Order of Protection was entered forbidding him from contacting Nory.  (Compl. at 11.)  In defiance of the order, plaintiff texted Nory and tried to explain himself.  (*Id.*)  He also mentioned that he knew

6

her address, which she interpreted as a threat. Plaintiff was arrested again, placed on medication, and incarcerated for 5 months. (*Id*.)

*6.  Long Term Disability Leave and Termination*

During his incarceration, plaintiff kept in touch with his supervisor, Seth. (*Id*.) He told Seth that his arrest arose out of his contact with Nory, and kept in touch with succeeding supervisors Garth and Vincent throughout his rehabilitation. (Opp'n at 4). When he was released, J.P. Morgan invited him to return to work, however plaintiff explained that he was required to enroll in an alcohol rehabilitation program and needed therapy. (Compl. at 11.) After over a year on leave, plaintiff's therapist provided a letter that plaintiff could return to work in January 2011. (Compl. at 12.) Plaintiff filled out rehire paperwork and disclosed his criminal record. J.P. Morgan asked plaintiff to wait to start until there was a position for him. (*Id*.)

Rather than allow Plaintiff to return to work, on June 6, 2011, J.P. Morgan terminated his employment. (Compl. at 3, 12.) J.P. Morgan cited the fact that plaintiff had violated the company's harassment policy when he harassed Nory as the reason for his termination. (*Id*.)

*7.  EEOC Complaint and the Instant Lawsuit*

Plaintiff filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on October 5, 2011, which stated:

> I am a male with a qualifying disability. I worked for [J.P. Morgan] from January 15, 2008 until my discharge on June 7, 2011. I have performed my duties satisfactorily. I believe that I was discriminated against by my employer based on my disability. Specifically, on June 7, 2011 I was discharged because my employer found out that I had civil charges in 2008 for harassing an affiliate employee and therefore violating company conduct policy. At the time of this incident my disability was the cause for my actions. I was terminated while I was on sick leave for my disability. (Docket No. 15-2.)

Plaintiff received a Dismissal and Notice of Right to Sue letter on April 30, 2012. (Compl. at 14.) He commenced this action on July 27, 2012, seeking $69,000,000.00. (Compl. at 12). Plaintiff seeks that amount because he alleges he is "degenerate so … should use a degenerate number." (*Id*.)

Plaintiff contends that the reason given for his termination was mere pretext because "they knew when [he] went to jail [that he had harassed Nory] and [J.P. Morgan] claimed they wanted [him] back the whole time [he] was on disability…." (*Id*.) It was not until he was to return from long-term disability leave that his employer terminated him because "[t]hey were scared of his mental disability and the liability it might cause them." (*Id*.)

Plaintiff also contends that he was subject to a hostile work environment at J.P. Morgan, on account of his mental disability in that J.P. Morgan "caused the disability by the hostile work environment of [his] coworkers." (*Id.*)

## 8. *Defendant's Motion to Dismiss*[4]

Defendant moves to dismiss plaintiff's complaint on the grounds that (1) plaintiff's hostile work environment claim is time barred because it accrued more than 300 days before plaintiff's EEOC complaint was filed and does not "fall within the coverage of the October 2011 charge of discrimination" and (2) plaintiff has failed to state a claim for discriminatory termination. Defendant also contends that the complaint should be dismissed because plaintiff's complaint conclusively demonstrates that he was terminated because he violated Defendant's non-harassment policy.

---

[4] Defendant has submitted documentary evidence in support of its motion to dismiss and given *pro se* plaintiff notice, pursuant to Eastern District of New York Local Civil Rule 12.1, that this Court is permitted, under Rule 12(d) of the Federal Rules of Civil Procedure, to convert the motion to a summary judgment motion. Summary judgment is premature at this time. Accordingly, the Court declines to consider evidence outside the four corners of the pleadings, unless incorporated into the complaint.

## DISCUSSION

As set forth below, the Court finds that plaintiff's hostile work environment claim is not adequately exhausted and finds that plaintiff's discriminatory termination claim is adequately pled.

### A. *Hostile Work Environment Claim*

#### 1. *Exhaustion of Hostile Work Environment Claim*

"Exhaustion of administrative remedies through the EEOC is an essential element of the [ADA's] statutory scheme[] and, as such, a precondition to bringing [an ADA claim] in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001) (per curiam). In New York, which has both state and local fair employment agencies, an individual who initially files a grievance with the state or local agency must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). Failure to file an administrative charge with the EEOC within the 300 days extinguishes the claim and prohibits recovery. *Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and "each discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Here, plaintiff's hostile work environment claim arises out of his tenure at three of defendant's Brooklyn locations between January and July 2008. He filed his grievance with the EEOC more than 300 days later, on October 5, 2011, asserting that his employment was terminated on June 7, 2011, on account of his disability. Thus, any claim arising out of

9

discriminatory acts that took place more than 300 days before he filed his EEOC complaint (December 9, 2010) is extinguished unless an exception to the exhaustion requirement applies.

### i. *Continuing Violation Exception*

Plaintiff alleges that his hostile work environment claim was brought to the EEOC within 300 days of the final discriminatory act– his termination. The "continuing violation" doctrine extends the 300 day filing period in cases alleging a hostile work environment because "[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years." *Morgan*, 536 U.S. at 115. Where the doctrine applies, the court may consider "the entire time period of the hostile environment," even though "some of the component acts … fall outside the statutory time period[, p]rovided that an act contributing to the claim occur[red] within the filing period" *Id*. at 117. It is essential that at least one act that is "part of the same actionable hostile work environment practice … falls within the statutory time period." *Id*. at 120.

However, not all discriminatory acts are part of the continuing violation. Discrete incidents of discrimination that are unrelated to the hostile work environment, "such as termination, failure to promote, denial of transfer, or refusal to hire" cannot be part of a continuing violation and cannot supply the hook to bring an otherwise untimely hostile work environment claim into the 300 day time period. *Id*. at 114. Thus, the question before the court is whether the discriminatory termination complained of in plaintiff's EEOC complaint is a component of his hostile work environment claim or constitutes a discrete act of discrimination. In *Morgan*, 536 U.S. at 101, the Supreme Court illustrated the exact question before the court with two 401 day scenarios:

> "(1) Acts on days 1–400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days?
>
> (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400. Can the act occurring on day 401 pull the other acts in for the purposes of liability?"

The Court explained that "all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one 'unlawful employment practice' and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole." *Id.* However, "if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act." *Id.*

The question here is whether plaintiff's termination is an incident that, coupled with incidents that took place between January and July 2008, gave rise to a single actionable hostile work environment claim. It is not, and thus the continuing violation doctrine has no application. Plaintiff's discriminatory termination claim is based on a discrete act, his termination, as opposed to the cumulative effect of many small hostile acts. *See Rodriquez v. Cnty. of Nassau*, 933 F. Supp. 2d 458, 462 (E.D.N.Y. 2013) ("[T]ermination is a discrete act."). Moreover, even if termination could be part of a hostile work environment, the fact that nearly three years elapsed between the incidents of harassment, during which time three successive supervisors oversaw plaintiff's position, belies plaintiff's continuing violation argument. *Morgan*, 536 U.S. at 120 (considering whether incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers in determining whether they were part of the same actionable hostile environment claim); *Benson v. N. Shore-Long Island*

11

*Jewish Health Sys.*, 482 F. Supp. 2d 320, 330 (E.D.N.Y. 2007) ("Acts occurring outside the limitations period that are significantly far apart from each other are 'fatal' to a continuing violation argument.")

Here, plaintiff's discriminatory termination claim is a discrete discriminatory act and cannot be used as a hook to bring his hostile work environment claim within the 300 day period to file a charge with the EEOC. *Morgan*, 536 U.S. at 114. Therefore, his hostile work environment claim was extinguished by his failure to timely bring an EEOC charge.[5]

---

[5] Depending on the surrounding facts, if a plaintiff's mental impairment prevented him from meeting the filing deadline for an EEOC charge, that deadline, which is not jurisdictional, may be equitably tolled in certain "rare and exceptional circumstances." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (Equitable tolling is available when a plaintiff is "prevented in some extraordinary way from exercising his rights," although he "acted with reasonable diligence during the time period []he seeks to have tolled.); *see generally Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000) ("[T]he question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific."). Although plaintiff's complaint does not allege that his mental impairment prevented him from filing a timely charge, it does state that from September 2008 through mid-2009 he had only "occasional moments of sanity" until he "progressively got better" upon taking medication at Bellevue Hospital and that following his release from Riker's Island in 2009, plaintiff still needed therapy and alcohol treatment until January 2011. (Compl. at 11.) The Court need not reach the issue of whether plaintiff should be given an opportunity to establish the exacting requirements for equitable tolling because, as explained *supra* in Section A.1.ii, plaintiff's hostile work environment claim is otherwise barred by his failure to raise it in his 2011 EEOC charge. The Second Circuit has repeatedly admonished that questions of mental capacity should not be resolved on a motion to dismiss, and if plaintiff's hostile work environment claim did not fail for other reasons, plaintiff would be "entitled to an opportunity to adduce evidence supporting his equitable tolling claim." *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006) (summary order) ("Where, as here, the facts are disputed, the best practice is to analyze a question of mental incapacity in the context of summary judgment."); *Stella v. Potter*, 297 F. App'x 43, 46 (2d Cir. 2008) (summary order) (reversing dismissal pursuant to Rule 12(c) because the district court should have accepted plaintiff's allegation that his mental illness, depression, prevented him from timely notifying an EEO counselor.); *Brown v. Parkchester S. Condos.,* 287 F.3d 58, 60–61 (2d Cir. 2002) (vacating district court's dismissal, finding "an evidentiary hearing" necessary in order "to determine to what extent, if any, [plaintiff]'s condition did in fact inhibit his understanding or otherwise impair his ability to comply, such that equitable tolling would be in order"); *see also Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 136-37 (E.D.N.Y. 2013) (Equitable tolling "is an issue best analyzed in the context of summary judgment.").

### ii. Hostile Work Environment Claim and Continuing Violation Theory Absent from EEOC Charge

Plaintiff's hostile work environment claim fails for another reason – he did not assert the claim or his continuing violation theory before the EEOC. *See Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001) (A "plaintiff may not rely on a continuing violation theory of timeliness unless []he has asserted that theory in the administrative proceedings."); *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985) ("[A] continuing violation [must be] clearly asserted both in the EEOC filing and in the complaint.").

A district court may not hear pre-charge claims that were not included in the charge filed with the EEOC unless the claims are "reasonably related" to claims asserted before the EEOC. *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008). A claim is "reasonably related" if the new claim "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id*. at 159 (citations omitted). In making this determination, this Court considers the factual allegations made in the EEOC charge and determines whether those allegations gave the EEOC "adequate notice to investigate discrimination on both bases." *Id*. at 158 (citations omitted). This flexibility is based on the recognition that charges before the EEOC are held to a "loose pleading" standard because they are "filled out by employees without the benefit of counsel" in order "to alert the EEOC to the discrimination." *Id*. (citations omitted).

Here, plaintiff's EEOC complaint made no mention of his hostile work environment claim, but merely stated that "on June 7, 2011 I was discharged because my employer found out that I had civil charges in 2008 for harassing an affiliate employee and therefore violating company conduct policy. At the time of this incident my disability was the cause for my actions. I was terminated while I was on sick leave for my disability." (Docket No. 15-2.) This charge

would not prompt the EEOC to investigate the climate in plaintiff's workplace in 2008. At best, the charge alleges that plaintiff was subjected to discriminatory termination in 2011 and the grounds supplied by J.P. Morgan for terminating his employment were pretext. A reasonable EEOC investigator might have spoken with the company's Human Resources department or plaintiff's supervisors about the circumstances surrounding his termination. However, plaintiff's relationship with his coworkers in 2008 is remote in time, involved different supervisors, and was unrelated to either the 2008 "civil charges … for harassing an affiliate employee" or his termination, and therefore would not fall within the scope of a reasonable EEOC investigation. By not asserting his hostile work environment claim or the continuing violation theory as a means of extending the 300–day limitations period in the EEOC charge, plaintiff denied the agency an opportunity to investigate the company's 2008 conduct.

For these reasons, the portion of defendant's motion to dismiss concerning plaintiff's hostile work environment claim is granted.

### 2. *Leave to Replead*

Plaintiff is denied leave to replead his hostile work environment claim because it is absent from his EEOC charge and not reasonably related to his termination. Thus, any attempt to replead that claim would be futile. *See Zavalidroga v. Cote*, 395 F. App'x 737, 741 (2d Cir. 2010) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("Although a district court generally should not dismiss a *pro se* complaint without granting the plaintiff leave to amend, dismissal is appropriate if leave to amend would be futile.").

### B. Discriminatory Termination Claim

#### 1. *Sufficiency of Pleadings*

To survive a Rule 12(b)(6) motion, a plaintiff alleging employment discrimination need not plead a *prima facie* case of discrimination, but must only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (citation omitted). "[A]t a minimum, employment discrimination claims must meet the [plausibility] standard of pleading set forth in *Twombly* and *Iqbal,* even if pleading a *prima facie* case is not required." *Hedges v. Town of Madison,* 456 F. App'x 22, 23 (2d Cir. 2012) (summary order).

Although the *prima facie* elements of a discriminatory termination claim need not be established, they do "provide an outline of what is necessary to render a plaintiff's employment discrimination claim … plausible." *Pietri*, 936 F. Supp. 2d at 138-39 (internal citation and punctuation omitted). "Courts therefore consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Id.* at 139 (citation and internal punctuation omitted).

Title I of the ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The *prima facie* elements of a discrimination claim under the ADA are "(a) that [the] employer is subject to the ADA; (b) that [plaintiff] is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform

the essential functions of the job …; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)). To satisfy the last element, the causal relationship between the disability and the adverse employment decision need not be direct, and a plaintiff may establish that the decision was motivated by his disability by demonstrating that "the disability caused conduct that, in turn, motivated" the employer's decision. *Sedor v. Frank,* 42 F.3d 741, 746 (2d Cir. 1994); *see also Greene v. New York*, No. 95 civ. 6580 (DAB), 1998 WL 264838, *5 (S.D.N.Y. May 22, 1998).

Plaintiff alleges that he was fired on account of conduct that was caused by his disability, namely that he "was discharged because [his] employer found out that [he] had civil charges in 2008 for harassing an affiliate employee and therefore violating company conduct policy. At the time of this incident [his] disability was the cause for [his] actions." (Docket No. 15-2.). He also alleges that his supervisors perceived him as disabled and "were scared of [his] mental disability and the liability it might cause them." (Compl. at 12.). J.P. Morgan does not dispute that plaintiff has sufficiently pled that he was terminated from a job he was otherwise qualified to perform on account of his mental illness or conduct caused by his mental illness.

### 2. Burden Shifting Analysis

J.P. Morgan disputes that it terminated plaintiff on the basis of his disability. (Memo at 10.) Rather, J.P. Morgan asserts, it terminated plaintiff because he violated J.P. Morgan's non-harassment policy. (*Id.* at 11-12). Plaintiff, in turn, points to the fact that defendant did not terminate him immediately upon learning of his violation of the workplace non-harassment policy. He argues that J.P. Morgan was aware of this conduct for at least two years prior to his

16

discharge and waited until plaintiff requested to return to work to discharge him. These arguments by the partoes are premature.

Under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), which applies to claims alleging discriminatory termination under the ADA, the plaintiff has the "initial burden of presenting a *prima facie* case" which creates "a rebuttable presumption of the existence of the ultimate fact at issue: … the employer's intent to discriminate against the plaintiff." *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) (construing *McDonnell Douglas*, 411 U.S. at 802-04). Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulat[e] a legitimate, non-discriminatory reason for the employment action," at which point "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture," and the burden shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

However, the burden-shifting framework laid out in *McDonnell Douglas* is not applicable on a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 511 ("This Court has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Amron v. Morgan Stanley Inv. Advisors, Inc.,* 464 F.3d 338, 343 (2d Cir. 2006) (*McDonnell Douglas* standard inappropriate in 12(b)(6) context); *Lax v. 29 Woodmere Blvd. Owners, Inc.,* 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011) (The "burden-shifting analysis is not applied at the motion to dismiss stage"); *Pietri*, 936 F. Supp. 2d at 140 (same). The Supreme Court, in *Swierkiewicz*, emphasized that a *prima facie* case is an evidentiary standard, and "should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 512.

At this juncture in the litigation, it is sufficient that plaintiff has pled a *prima facie* case. He need not *establish* that case nor rebut defendant's proffered non-discriminatory reason for his termination. Plaintiff's complaint, liberally construed, pleads enough facts to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (citation omitted). Plaintiff should have an opportunity to engage in discovery to "unearth[] relevant facts and evidence" to prove J.P. Morgan's motives. *Id*.

In sum, it would be premature for this Court to consider defendant's proffered non-discriminatory basis for discharging plaintiff or plaintiff's evidence of pretext before the parties have the benefit of discovery. Accordingly, this branch of defendant's motion to dismiss is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's hostile work environment claim is dismissed and his ADA claim is referred to Magistrate Judge Scanlon for further proceedings.

**SO ORDERED.**

>            _____S/_____
> SANDRA L. TOWNES
> United States District Judge

Brooklyn, New York
Dated: March 31, 2014